## RIMLAND v. MARCUS.

(Supreme Court, Appellate Term, First Department. December 6, 1912.)

1. APPEAL AND ERROR (§ 1050*)—REVERSAL—PREJUDICIAL ERROR.

Where the testimony is directly contradictory, and the record does not disclose with any degree of certainty which is true, the erroneous admission of any evidence requires a reversal, especially where the evidence had no purpose except to prejudice the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

2. BILLS AND NOTES (§ 501*)—ACTIONS—EVIDENCE—ADMISSIBILITY.

In an action on a note, evidence that plaintiff transferred the note to a bank, which commenced an action thereon and then discontinued, offered for the express purpose of showing that plaintiff transferred the note to exclude defenses, was improperly admitted.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1698–1707; Dec. Dig. § 501.*]

Appeal from Municipal Court, Borough of Manhattan, Second District.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Joseph Rimland against Louis Marcus. From a judgment for defendant and an order denying a new trial, plaintiff appeals. Reversed, and new trial ordered.

Argued November term, 1912, before LEHMAN, PAGE, and HOTCHKISS, JJ.

Otterbourg, Steindler & Houston, of New York City (Edwin M. Otterbourg, of New York City, of counsel), for appellant.

Joseph Rubin, of New York City, for respondent.

LEHMAN, J. The plaintiff sued upon a note given by the defendant in payment for a horse. The defendant denies liability on the note, upon the ground that the plaintiff warranted the horse to be sound, and that this warranty was false. He claims that the horse became sick from influenza a couple of days after the sale, and that, after he apparently recovered from influenza, he developed pneumonia. It was shown by his own veterinary surgeon that the horse had recovered from the attack of pneumonia, and was given light work by the defendant in his business for several weeks after the attack of pneumonia. It was shown that the horse remained in defendant's stable for about two months after the sale, and was then brought from defendant's stable to another stable. Defendant claims that the plaintiff agreed to take back the horse soon after it became sick, but asked the defendant to have it cared for at his stable until it was better, agreeing that he would pay half the expense and send for the horse after it was better. Defendant produced as a witness a boy, who claims that plaintiff told him to bring the horse from defendant's stable to the second stable, and that he followed these instructions and delivered the horse at the second stable to the plaintiff. Plaintiff denies that the illness of the horse was due to conditions existing at the time of the sale, denies that he ever promised to take the horse back, denies that it was ever returned to him or taken by him, and produces as his witnesses the owners of the second stable, who say that the horse was delivered to them by the defendant himself and on his own account, and not by the boy who claims to have been employed by the plaintiff; and they further show that the plaintiff never received the horse. It is therefore quite obvious that at least one set of witnesses is exercising more than the proverbial leeway in regard to the strict truth, which is popularly supposed to be venial in horse sales. At least some of the witnesses are deliberately committing perjury.

[1] The record itself fails to disclose with any degree of certainty with whom the truth lies; for there are improbabilities in the testimony produced by both sides. If, therefore, the record discloses the erroneous admission of any evidence, which can reasonably be regarded as probably prejudicing the jury, the judgment should be reversed; and this is particularly true if the evidence offered would have had no purpose except to prejudice the jury.

[2] The defendant on this trial was permitted, over objection and exception, to show the negotiation of this note by the plaintiff to a bank, and that the bank began a suit on the note against both maker

and indorser, and subsequently discontinued the action. The defendant's attorney stated, in the presence of the jury, that the purpose of this testimony was to show that plaintiff knew that, if the note got into the hands of a third party, the defendant would have to pay it, and then have recourse only to the plaintiff for reimbursement. There is no doubt but that, when a party has received a negotiable instrument, no possible inference can be formed from a negotiation to a bank for discount that the holder was attempting to keep the maker from interposing a just defense; and the attempt to introduce a false issue in the case to prejudice the jury was prejudicial error, requiring a reversal of the judgment.

Judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

PAGE, J., concurs.   HOTCHKISS, J., concurs in result.